# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WALRUS BRANDS, L.L.C.,<br><br>               Plaintiff,<br><br>v.<br><br>PEACHES UNIFORMS, INC.,<br><br>               Defendant. | **JURY TRIAL DEMANDED**<br><br>Civil Action No. _____ |

## COMPLAINT

Plaintiff, WALRUS BRANDS, L.L.C. ("Plaintiff" or "Walrus"), sues Defendant, PEACHES UNIFORMS, INC. ("Defendant" or "Peaches") and alleges:

## NATURE OF THE ACTION

1. This is a classic case of willful "knockoff" trade dress and trademark infringement based on Defendant's wholesale copying of Plaintiff's trade dress. This Complaint alleges that Defendant slavishly copied Plaintiff's scrubs and thereby infringed Plaintiff's rights in and to its highly distinctive trade dress, in violation of Section 43(a)(1)(A) of the Lanham Act's prohibition against falsely designating the origin of Defendant's infringing scrubs.

## PARTIES

2. Plaintiff, WALRUS BRANDS, L.L.C., is a limited liability company organized and existing under the laws of the State of Delaware, and has its principal place of business located at 212 West Superior Street, Unit 503, Chicago, Illinois 60654.

3. Defendant, PEACHES UNIFORMS, INC., is a corporation organized and existing under the laws of the State of Texas, and has its principal place of business located at 201 Regal Row, Dallas, Texas 75247.

**JURISDICTION AND VENUE**

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1338 (patents, copyrights, trademarks and unfair competition); and 28 U.S.C. § 1332(a) because the parties are diverse and the amount in controversy exceeds $75,000.

5. This Court has personal jurisdiction over Defendant because Defendant committed the tortious conduct alleged in this Complaint in this State; indeed, Defendant has sold a substantial amount of infringing goods in this State, and because Defendant has engaged in substantial and not isolated business activity in this State.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District, and Defendant is subject to the Court's personal jurisdiction with respect to this action.

**GENERAL ALLEGATIONS**

**A. Walrus and its Trade Dress**

7. Through this complaint, Walrus alleges that the protectable trade dress associated with its Styles 5300, 5400 and 5500 have been infringed by Peaches through its sale of knockoff scrubs, Styles 8403 and 8705, bearing trade dress that is likely to cause confusion with Walrus's trade dress.

8. Walrus is an established, widely recognized and popular manufacturer, wholesale seller and designer of medical apparel, particularly scrubs.

9. Walrus designs all of the scrubs it sells, as well as the trade dress associated with such scrubs.

10. Walrus has been marketing and selling scrubs bearing a unique trade dress, as further described herein (the "Trade Dress").

11. Walrus had made extensive and continuous use of the Trade Dress throughout the United States prior to the time Defendant commenced selling knockoff, infringing scrubs bearing Walrus's distinctive Trade Dress.

12. By virtue of extensive investment, advertising and promotion, Walrus's Trade Dress has become widely known and immediately recognizable to consumers throughout the United States and abroad. Specifically, Walrus has invested nearly $1,000,000 on advertising and promotion of its goods.

13. Walrus advertises its Trade Dress through a wide range of media, including, but not limited to, in magazines and on billboards, radio, and at trade shows.

14. Through its extensive media coverage and advertising, the Trade Dress has become trend-setting, well known, highly popular, and used by consumers and retailers to identify the scrubs as emanating from a single source of high quality apparel.

15. The Trade Dress has acquired a secondary meaning in the minds of consumers as an identifier for specific scrubs that emanate from a specific source or origin.

16. Over the past decade, Walrus has earned over 10 million dollars in revenue from its sales of scrubs.

**B. The Elements of the Trade Dress**

17. Walrus's scrub top bearing Style 5400, as depicted below, contains distinctive trade dress comprised of:

**Style 5400**

- A short-sleeve, buttonless, pullover style scrub sold under the mark Classic Scrub Top.
- Angled right and left hand pockets placed on bottom front of garment
- Silver tab placed on top center of right sleeve.
- A chest Velcro pocket with badge holder and stylized logo.

- A v-neck with a contrasting back neck line and overlap on left hand side.
- Extra pockets placed inside garment.
- White sticker containing stylized logo and the words "YO! POCKETS INSIDE" placed on left lower front advertising extra pockets placed inside garment.
- Contrasting aesthetic and distinctive color stitching placed on underarm of sleeves, left and right sides of chest and front pockets, pen holder in chest pocket, and tops of side slits on bottom of garment.
- Contrasting aesthetic and distinctive border at back of neck containing stylized logo.
- MED FLEX brand stretch fabric.

18. Walrus scrub pant bearing Styles 5300 and 5500, as depicted below, are well known garments featuring a distinctive trade dress comprised of:

### Style 5300

- Flat front, straight leg, drawstring top pants.
- Contrasting stylized logo placed on top of one of the pant legs.
- Contrasting aesthetic and distinctive color drawstrings.
- Inside back elastic pager clip.
- Contrasting color logo placed on the inside top center of pants.
- Contrasting color logo placed near top of back pocket.
- MED FLEX brand stretch fabric.

### Style 5500

- Flat front, boot cut, drawstring top pants.
- Contrasting aesthetic and distinctive color drawstrings containing embossed, stylized logo repeated along length of drawstring.
- Contrasting stylized logo placed on top front of left leg.
- Inside of boot cut lined in aesthetic and distinctive contrasting color.
- Outside of boot cut lined in aesthetic and distinctive color stitching.
- MED FLEX brand stretch fabric.

C. **Peaches**

19. Peaches manufacturers, distributes, sells and/or offers to sell uniforms and scrubs, including the infringing scrubs described below.

4

**D. The Copying**

20. Seeking to capitalize on the success of Walrus's scrubs, Defendant intentionally, with reckless disregard, or negligently copied Walrus's Trade Dress in order to produce virtually identical knockoff copies of Walrus's scrubs (the "Infringing Products").

21. Defendant's Infringing Products were intentionally, with reckless disregard, or negligently designed to imitate, copy and counterfeit Walrus's scrubs and Trade Dress.

22. As depicted below, Defendant has copied virtually every element of Walrus's Trade Dress.

  A. Peaches scrub top bearing Style 8403 infringes Walrus's scrub top bearing Style 5400:



| Walrus's Style 5400 Scrub Top | Peaches' Style 8403 Infringing Scrub Top |
|---|---|
| A short-sleeve, buttonless, pullover style scrub sold under the mark "Classic Scrub Top." | A short-sleeve, buttonless, pullover style scrub sold under the mark "Classic Scrub Top." |
| Angled right and left hand pockets placed on bottom front of garment. | Angled right and left hand pockets placed on bottom front of garment. |



| | |
|---|---|
| Silver tab placed on top center of right sleeve. | Silver tab placed on top center of right sleeve. |
| A chest Velcro pocket with badge holder and stylized logo. | A chest Velcro pocket with badge holder and stylized logo. |
| A v-neck with a contrasting back neck line and overlap on left hand side. | A v-neck with a contrasting back neck line and overlap on left hand side. |

| | |
|---|---|
|  |  |
| Extra pockets placed inside garment. White sticker containing stylized logo and the words "YO! POCKETS INSIDE" placed on left lower front advertising extra pockets placed inside garment. | Extra pockets placed inside garment. White sticker containing stylized logo and the words "LOOK! Extra pockets inside" placed on left lower front advertising extra pockets placed inside garment. |
|  |  |
| Contrasting aesthetic and distinctive color stitching placed on underarm of sleeves, left and right sides of chest and front pockets, pen holder in chest pocket, and tops of side slits on bottom of garment. | Contrasting aesthetic and distinctive color stitching placed on underarm of sleeves, left and right sides of chest and front pockets, pen holder in chest pocket, and tops of side slits on bottom of garment. |
|  |  |
| Contrasting aesthetic and distinctive border at | Contrasting aesthetic and distinctive border at back |

7

| back of neck containing stylized logo. | of neck containing stylized logo. |
|---|---|
|  MED FLEX brand stretch fabric. | EZ-FLEX brand stretch fabric. |

B. Peaches' scrub pant bearing Style 8705 infringes Walrus's scrub pant bearing Styles 5300 and 5500:

| **Walrus's Scrub Pants Style 5300** | **Peaches' Infringing Scrub Pants Style 8705** |
|---|---|
|  | |

8


| | |
|---|---|
| Flat front, straight leg, drawstring top pants. Contrasting stylized logo placed on top front of one of the pant legs. | Flat front, straight leg, drawstring top pants. Contrasting stylized logo placed on top of one of the pant legs. |
|  |  |
| Contrasting aesthetic and distinctive color drawstrings. | Contrasting aesthetic and distinctive color drawstrings. |
|  |  |
| Inside back elastic pager clip. | Inside back elastic pager clip. |
|  |  |
| Contrasting color logo placed on the inside top center of pants. | Contrasting color logo placed on the inside top center of pants. |

| | |
|---|---|
|  |  |
| Contrasting color logo placed near top of back pocket. | Contrasting color logo placed near top of back pocket. |
|  |  |
| MED FLEX brand stretch fabric. | EZ-FLEX brand stretch fabric. |

C. Peaches' scrub pant bearing Style 8705 infringes Walrus's scrub pant bearing Styles 5300 and 5500:

| **IguanaMed Classic Scrub Pant Style 5500** | **Peaches' Classic Scrub Pant Style 8705** |
|---|---|
|  |  |
| Flat front, boot cut, drawstring top pants. Contrasting aesthetic and distinctive color drawstrings containing embossed, stylized logo repeated along length of drawstring. Contrasting stylized logo placed on top of one of the pant legs. | Flat front, boot cut, drawstring top pants. Contrasting aesthetic and distinctive color drawstrings containing embossed, stylized logo repeated along length of drawstring. Contrasting stylized logo placed on top of one of the pant legs. |
|  |  |
| Inside of boot cut lined in aesthetic and distinctive contrasting color. | Inside of boot cut lined in aesthetic and distinctive contrasting color. |




| Outside of boot cut lined in aesthetic and distinctive contrasting color stitching. | Outside of boot cut lined in aesthetic and distinctive contrasting color stitching. |
|---|---|




| MED FLEX brand stretch fabric. | EZ-FLEX brand stretch fabric. |
|---|---|

23. The striking similarities between the parties' trade dress, including its most salient aesthetic and distinctive elements, makes clear that Defendant intentionally, with reckless disregard or negligently copied Walrus's Trade Dress in a conscious and deliberate attempt to trade off the good will associated with Walrus's distinctive Trade Dress.

24. Consumers of the parties scrubs are likely to become confused within the meaning of Section 43(a) of the Lanham Act because:

(a) Consumers are likely to erroneously assume that the parties are connected or affiliated with each other or to erroneously assume that one party sponsors or endorses the other party's sale of scrubs bearing the Trade Dress;

(b) Consumers are likely to erroneously assume that the parties' scrubs come from the same source or origin when in fact the parties' scrubs come from two different sources and origins;

(c) Consumers are likely to assume Walrus's scrub originates from Peaches, or vice versa.

25. The parties have the same customers and customers with similar attributes. Indeed, many of the parties' customers purchase scrubs from the exact same brick and mortar retailers and/or from the exact same internet sites.

26. Medical professionals comprise the bulk of the parties' customers, and as a community of people are likely to interact and see each other.

27. The cost of the scrubs is not so high that it warrants a studied purchase by medical professionals. Consequently, medical professionals are not very likely to seek out and notice minor differences between parties' scrubs.

28. Confusion is likely to occur both at the point of sale when a medical professional purchases the parties' products, and when a medical professional is seen or sees other medical professionals wearing the parties' products.

29. Both parties sell their scrubs through the same channels of distribution.

30. Both parties market their scrubs through the same channels, e.g., at medical apparel conventions, using print and internet advertisements, and directly to brick and mortar stores.

31. Peaches markets and sells its infringing scrubs in the exact same geographic territory as does Walrus.

32. Consumers and retailers have already become confused as to the source or origin of the parties' products.

33. As a result of the confusion, Walrus has suffered damage to its reputation, its sales have eroded, it has had to incur additional expenditures to promote its scrubs, and its prices have eroded.

### E. Miscellaneous, Conditions Precedent and Attorney's Fees

34. All conditions precedent to the institution, maintenance and prosecution of this action have occurred, have been performed or have otherwise been waived.

35. Walrus has retained undersigned counsel to represent it in this matter, and is obligated to pay its counsel a reasonable fee for its services. Walrus is entitled to recover the attorneys' fees and costs it incurs in this matter pursuant to 15 U.S.C. § 1117.

### COUNT I
### False Designation of Origin
### Violation of 15 U.S.C. § 1125

36. The allegations contained in paragraphs 1 through 35 are hereby re-alleged as if fully set forth herein.

37. Walrus's Trade Dress is distinctive or has acquired secondary meaning.

38. Walrus's Trade Dress is comprised of a combination of elements and it is not functional.

39. Defendant's scrubs copy and imitate every element of Walrus's Trade Dress.

40. Defendant's unauthorized sales of infringing scrubs and its commercial advertising and promotion of them was done "in commerce" within the meaning of the Lanham Act.

14

41. Defendant's sales and offers to sell infringing scrubs constitutes a false designation of origin, or a false or misleading description or representation of fact, which is likely to cause confusion, mistake or deceive consumers, all as more specifically set forth in the factual background section.

42. Walrus cannot control the nature and quality of the goods offered by Defendant or Defendant's commercial activities, and any failure, neglect or default by Defendant when selling or promoting the infringing scrubs will and does reflect adversely on Walrus. Consequently, efforts by Walrus to protect its reputation are being hampered. And, Walrus is losing sales, its prices are being eroded, its reputation is being diminished. In response, Walrus has found it necessary to make considerable additional expenditures to promote its goods and dispel confusion. Based upon the foregoing, Walrus is suffering irreparable harm as a result of the infringement.

43. Walrus's damages are continuing, and additional injury and damage to Walrus will continue to occur so long as the above-alleged unauthorized and infringing use by Defendant persists.

44. The infringement by Defendant is willful and deliberate, has resulted in gains, profits and advantages to Defendant, and is designed specifically to trade upon the enormous goodwill associated with Walrus's Trade Dress.

45. Walrus does not have an adequate remedy at law.

**WHEREFORE**, Plaintiff, Walrus, respectfully requests that this Court enter judgment in its favor and against Defendant:

A. Permanently enjoining Defendant, and its successors, assigns, officers, agents, servants, employees, attorneys or representatives, and any parties in active concert or participation with Defendant, from, directly or indirectly, importing, exporting, distributing,

15

manufacturing, promoting, advertising, selling or offering for sale, any product or service using a trade dress that is confusingly similar to Walrus's Trade Dress;

      B.      Ordering Defendant to turn over to Walrus all goods, labels, signs, prints, packages, wrappers, receptacles, documents, advertisements, letterhead, business cards or other promotional materials in its possession or under its control bearing a trade dress that is confusingly similar to Walrus's Trade Dress;

      C.      Ordering that an accounting be made of the profits that Defendant has wrongfully obtained from its use and sales of the infringing scrubs;

      D.      Awarding Walrus Defendant's profits under 15 U.S.C. § 1117(a)(1);

      E.      Awarding Walrus its sustained damages under 15 U.S.C. § 1117(a)(2);

      F.      Awarding Walrus three times its actual damages and Defendant's profits, enhanced as the Court deems just, under 15 U.S.C. § 1117(a)(3).

      G.      Awarding Walrus its attorneys' fees and costs incurred in this action as an exceptional case under 15 U.S.C. § 1117(a)(3);

      H.      Granting Walrus such other and further relief as the Court deems just and proper.

## **DEMAND FOR A JURY TRIAL**

Walrus hereby demands a trial by jury on all issues so triable.

Dated: June 19, 2012     Respectfully submitted,

NICOLETTI & ASSOCIATES, PLLC

By:  /s/ *Paul J. Nicoletti*
Paul J. Nicoletti, Esq. (P44419)
36880 Woodward Ave, Suite 100
Bloomfield Hills, MI 48304
Tel: (248) 203-7800
Fax: (248) 203-7801
E-Fax: (248) 928-7051
Email: paul@nicoletti-associates.com
*Attorneys for Plaintiff*